## 28980.   ENGLISH *v.* GEORGIA POWER COMPANY.

DECIDED OCTOBER 25, 1941.   REHEARING DENIED DECEMBER 15, 1941.

*F. Joe Turner,* for plaintiff.

*MacDougald, Troutman & Arkwright, William H. Schroeder,* for defendant.

MACINTYRE, J.   Joe English, by next friend, Mrs. Emma English, his mother, sued the Georgia Power Company for personal injuries alleged to have been caused by the negligence of the defendant.   The judge, on motion of the defendant, directed a verdict in its favor.   The plaintiff's motion for new trial was overruled, and he excepted.

The plaintiff. a child of two years, was riding as a guest in an automobile driven by E. F. Sinyard, who had but one arm, in a southerly direction on Howell Mill Road in the City of Atlanta. At the place where Sinyard's automobile collided with the defendant's street-car the street-car track is located in the center of the road, which is approximately forty feet wide, and there were other automobiles parked along the right curb relatively to the direction in which Sinyard's automobile was travelling.   According to the testimony of Sinyard, he had passed three or four other automobiles which were parked on the right side of the road, and in so

doing he was required to go upon the street-car track. After passing these parked automobiles, he turned off of the track to his right, and as he approached another parked automobile he again turned upon the track to pass it. As to what then occurred we quote from Sinyard's testimony: "I came around the automobile parked on my right side before this collision took place; I imagine it was about ten feet. I pulled out on the car line about ten or fifteen feet before I got to the automobile, and then I will say it was about that distance when the collision happened. My automobile was situated sideways when it came in contact with the street-car, hit the left side [of the automobile]. . . I seen the street-car before it hit me; I seen the street-car coming across the bridge at White Provision Company, I will say around 200 feet before we met each other. This street-car was going in the opposite direction; the street-car was going north and I was coming to town. Mrs. English was injured, and her baby. I did not lose consciousness during any portion of the accident. I remember everything that was going on all the time." On cross-examination Sinyard testified that before this trial he had made a deposition in which he stated that he did not see the street-car until after the collision, and that he fainted, had a heart attack, and did not know what happened, but that now he says that he did not pass out and never lost consciousness and that the reason he testified to the contrary in the deposition was that he was told to "tell it, like that, to keep down trouble in the family, hard feelings with my uncle and aunt. I was told, my uncle and aunt told me, to tell it like that; that it would cause him to lose his job with the Georgia Power Company; and since making my depositions I have filed suit against said company." With reference to whether the motorman applied his brakes, Sinyard testified: "I never did hear the motorman on the street car apply the brakes after he hit the automobile or beforehand at all. I would say the street-car ran after the impact, after the collision, around ten feet." Mrs. English, the plaintiff's mother, testified that she was playing with the baby (the plaintiff) on the back seat of the automobile. She also stated: "I did not get an opportunity to see the operator of the street car; all I saw was the street car. I did not hear any kind of noise of an approaching street car. I did not hear any noise as to brakes being applied. It seemed like the automobile stopped on the street-

car track. I could not tell you if it had stopped before the impact or stopped afterwards. When I seen the street car I fainted. . . After the impact I was unconscious. . . Being in the position I was, directly in front of it, and not having any background against which it would be moving to the side, but coming straight forward toward me, I did not actually know whether it [the street car] was moving at that time."

The plaintiff was a guest in the automobile which collided with the street-car. Hence, the contributory negligence, if any, of the driver of the automobile can not be imputed to the infant guest, and the conduct of the driver of the automobile is material only to the extent that it bears on the question whether, under all the circumstances, the motorman was negligent. Code, § 105-205; *Roach* v. *Western & Atlantic R. Co.*, 93 *Ga.* 785 (4) (21 S. E. 67); *Locke* v. *Ford,* 54 *Ga. App.* 322 (2) (187 S. E. 715).

The plaintiff alleged that the motorman was negligent in the following respects and that this negligence was the proximate cause of the injuries: (a) In operating the street car at the time and place in question at the fast and dangerous rate of speed of thirty-five miles per hour. (b) In failing to keep a lookout in the direction the street car was going. (c) In failing to warn the plaintiff and the driver of the automobile in which the plaintiff was riding that the street-car was approaching. (d) In failing to apply the brakes on the street car and check the speed thereof as it approached the plaintiff and the automobile in which he was riding. (e) In failing to apply the brakes on the street car efficiently and sufficiently and stop the street car before striking the automobile in which plaintiff was riding. (f) In operating the street car into and against the automobile in which the plaintiff was riding and injuring him. The acts of negligence stated in paragraphs (a) and (b) were expressly abandoned by the plaintiff in his brief.

"It is generally true that if a collision takes place on the wrong side of the road with respect to one of the parties, the presumption is against that party. *McGee* v. *Young,* 132 *Ga.* 606 (64 S. E. 689). In the present case it is apparent that at the time of the collision the plaintiff himself was on the wrong side of the road, and, nothing else appearing, he would not be entitled to recover. [Citing.] 'The presumption that one on the wrong side of the

highway is guilty of negligence, is one which may be rebutted. . . . Properly considered, the rule of the road is a rule of negligence, and the fact that a person was on the wrong side of the road when a collision took place does not per se make him liable for damages, but his liability is determined by the rules of law applicable to cases of negligence.' Huddy on Automobiles (7th ed.), § 323. 'In many of the decisions which hold that the violation of a traffic regulation is negligence per se, the intention of the decision is that the violation is negligence per se, unless some emergency or excuse can be furnished for the violation.' Huddy on Automobiles (7th ed.), § 323." *Sullivan* v. *Morris,* 50 *Ga. App.* 394, 396 (178 S. E. 324). "The rule of the road requires travelers with vehicles, when meeting, to each turn to the right." Code, § 105-112. An automobile driver on the highway has the right to assume that others driving vehicles will observe the rules prescribed by law respecting such vehicles. *Bach* v. *Bragg,* 53 *Ga. App.* 574, 577 (186 S. E. 711). One who is rightfully using the highway or street has a right to the use thereof superior to that of one violating the traffic regulations, and in the absence of knowledge is not required to anticipate that some other unlawful use will be made thereof in violation of the rule of the road and thus create a dangerous situation. *Eubanks* v. *Mullis,* 51 *Ga. App.* 728, 731 (181 S. E. 604). Under the rule of the road it seems unnecessary to suggest that when a vehicle which is able to turn either to the right or the left meets a street car, which can travel only along the one fixed track, the vehicle meeting the street car should, in the absence of any reason preventing, itself turn to the right. *Athens Ry. & El. Co.* v. *McKinney,* 16 *Ga. App.* 741, 745 (86 S. E. 83). The conduct of the driver of the automobile in which the plaintiff (a guest) was riding, whether careful or negligent, and regardless of what name his conduct may be given, whether it be denominated negligent or careful, is to be considered strictly only in its relationship to the issue on trial, to wit; the negligence of the motorman. The acts of contributory negligence of the driver of the automobile, as such, have no place in this case, but the acts of the driver of the automobile should be considered as a circumstance, along with other circumstances, in determining whether or not the motorman (not the driver of the automobile) was negligent. The plaintiff, having expressly abandoned the alleged acts of negligence on the part of

the motorman with reference to the speed of the street car and his keeping a proper lookout ahead, it must be taken as true that the street car was proceeding at a proper and legal rate of speed and the motorman was keeping a proper lookout ahead. The evidence sustains such an assumption. The only acts of negligence remaining were an alleged failure of the motorman to sound the bell, an alleged failure to properly apply the brakes, and in operating the street car into and against the automobile. The plaintiff's evidence on these subjects was the testimony of witnesses who did not testify expressly that they were in a position to hear the bell if it had been sounded, but merely stated that they did not hear the motorman do either. Under the testimony of the motorman and seven or eight disinterested witnesses, some of whom were riding on the street car, the evidence for the defendant was that the motorman properly sounded the bell and applied the brakes. Thus, the testimony of the defendant's witnesses on this subject was affirmative and positive, whereas the testimony of the plaintiff's witnesses was merely negative in character. Code, § 38-111; *Hambright* v. *Western & Atlantic R. Co.*, 112 *Ga.* 36 (37 S. E. 99); *Atlanta & West Point R.* v. *Johnson*, 66 *Ga.* 259, 271; *Pollard* v. *Todd*, 62 *Ga. App.* 251, 259 (8 S. E. 2d, 566). See *Climer* v. *Southern Railway Co.*, 43 *Ga. App.* 650 (159 S. E. 782).

Under the testimony of the witnesses for the plaintiff, the motorman had a right to assume that the driver of the automobile would not turn out from behind the parked automobile onto the track, and until it appeared that the driver of the automobile could not or would not exercise his power to protect himself and the guests in his automobile by waiting behind the parked automobile until the street car had passed before coming out from behind said parked automobile onto the track, which would of course have avoided the collision, the motorman was free from negligence. Virginia Ry. &c. Co. *v.* Leland, 143 Va. 920 (129 S. E. 700). There must be some evidence that the driver of the automobile could not or was not going to exercise care for the safety of those in his car, and there must be sufficient time and opportunity to discover, or a duty to discover, the danger to the guests in the automobile from the conduct of the driver of the automobile, for the motorman to save the guests in the automobile by using such care as an ordinarily prudent man would use under the same or similar circum-

stances. The plaintiff introduced no such evidence. The testimony of several passengers on the street car corroborated the motorman's affirmative and positive testimony that the street car was running slowly and when danger appeared imminent he put on the emergency brakes, and that the street car had almost stopped when the collision occurred. Until such time as the risk of a collision became imminent, the motorman had a right to assume that the driver of the automobile approaching from behind the parked automobile would wait until the street car had passed before coming onto the track in order to. avoid a collision with the street car. 3. Blashfield's Cyc. of Automobile Law, 313, § 1930 (24). Therefore, assuming that the risk of a collision did not become imminent until the automobile suddenly turned out from behind the parked automobile, a place of safety, into a place of danger on the track and within ten or fifteen feet from the street car (and it should be noted that the motorman was not required to act until it became reasonably apparent that the driver of the automobile would not or could not exercise his power to protect himself and the guests in his automobile under the circumstances here), it was too late for the motorman to avoid the collision.

Where a witness testifies that a certain act took place it is presumed that she knew it from her own knowledge, and in the absence of anything to the contrary the testimony is admissible, but if it appears from her own testimony that she is merely surmising that it took place it should be excluded, but a preliminary fact within her knowledge, which with other facts tends to establish an ultimate relevant fact that the act took place, should not be excluded. *Rivers* v. *State,* 118 *Ga.* 42, 44 (44 S. E. 859). Even though the question by counsel for the plaintiff was proper in that it sought to ascertain what the witness knew from the exercise of her senses of sight and hearing, yet where the answer went beyound the correct scope of counsel's question and stated a conclusion which was in the nature of a surmise only, under the rule of evidence above stated the answer was properly ruled out.

*Judgment affirmed. Sutton and Gardner, JJ., concur. Broyles, C. J., disqualified.*

ON MOTION FOR REHEARING.

MacIntyre, J. If the testimony of the motorman, a witness for the defendant, which the plaintiff quoted in his motion for re-

hearing was the truth of the occurrence, applying it to the principle that "until such time as the risk of collision becomes imminent, and thereby destroys the basis of the assumption, a motorman has the right to anticipate that an automobile approaching from the opposite direction on the car track will turn off the track in such time as to avoid harm, and may govern his conduct by such justifiable expectation" (3 Blashfield's Cyc. of Auto. Law and Practice, 313, § 1930), there could still be no recovery. While the testimony of the witnesses for the plaintiff and the defendant was conflicting, yet under neither could the plaintiff recover.

*Rehearing denied. Sutton and Gardner, JJ., concur.*